FILED
John E. Triplett, Acting Clerk
United States District Court

By CAsbell at 4:09 pm, Jun 16, 2020

# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

BERNARD E. JOHNSON, JR., as
Parent of B.E.J., III, a minor;
and ELVIRA LOWMAN, as Guardian
of B.E.J., III, a minor,

     Plaintiffs,

     v.

SHERIFF STEVE C. SIKES; DEPUTY
M. GARY RICHARDSON; LIBERTY
COUNTY SCHOOL DISTRICT; JANELLE
CHARLERY, teacher; WARNELLA
WILDER, administrator; and
GLENN WILSON, administrator,

     Defendants.

CV 4:18-216

## ORDER

Before the Court are two motions: (1) Defendants M. Gary Richardson and Steve C. Sikes' Partial Motion to Dismiss Plaintiffs' Second Amended Complaint, dkt. no. 37; and (2) Defendants Janelle Charlery, Liberty County School District ("School District"), Warnella Wilder, and Glenn Wilson's Motion to Dismiss Plaintiffs' Second Amended Complaint, dkt. no. 38. The motions have been fully briefed and are ripe for review. For the reasons provided below, M. Gary Richardson and Steve C. Sikes' Motion to Dismiss is **GRANTED**. Defendants Janelle Charlery, Liberty

County School District, Warnella Wilder, and Glenn Wilson's Motion to Dismiss is **GRANTED in part and DENIED in part**.

<u>BACKGROUND</u>

The facts stated herein are taken solely from Plaintiffs' Second Amended Complaint and are assumed to be true pursuant to Rule 12(b)(6). As discovery proceeds, the allegations in the Second Amended Complaint may or may not prove to be true. On October 24, 2016, B.E.J. III ("B.E.J.") was a student at Liberty County High School.  Dkt. No. 36 ¶¶ 19. At some point in the day, B.E.J. was in Defendant Janell Charlery's classroom. <u>Id.</u> ¶ 20. B.E.J. repeatedly approached Charlery, who was sitting at her desk, to seek assistance of some kind; Charlery repeatedly told B.E.J. to sit at his desk and eventually told him to stand in the hallway outside the classroom. <u>Id.</u> ¶¶ 21, 22. Instead, B.E.J. sat back down at his desk.  <u>Id.</u> ¶ 23. Charlery then contacted the front office of the school, and Defendants Warnella Wilder and/or Glenn Wilson sent the school resource officer, Defendant Deputy Gary Richardson, to Charlery's classroom. <u>Id.</u> ¶¶ 24, 25. Deputy Richardson came to the classroom, and when he arrived B.E.J was at his desk talking with another student.  <u>Id.</u> ¶ 26.

Deputy Richardson asked B.E.J. to come forward. <u>Id.</u> ¶ 27. B.E.J. responded by asking Deputy Richardson what he had done. <u>Id.</u> ¶ 28. Deputy Richardson then asked everyone except B.E.J. to leave the classroom, and he then berated, verbally challenged, and

2

confronted B.E.J. Id. ¶¶ 29, 30. It is alleged that Deputy Richardson was attempting to provoke B.E.J. to do something wrong, such as to react physically toward the Deputy. Id. ¶ 32. It is also alleged that Deputy Richardson placed his body in a manner that controlled what B.E.J. could do and where he could go. Id. ¶ 33.

B.E.J. cooperated with Deputy Richardson, and the two departed the classroom. Id. ¶ 34. Deputy Richardson told B.E.J. to walk ahead of him and that they were going to the administrative offices. Id. ¶ 35. The Second Amended Complaint further alleges that at some point while B.E.J. was walking in front of Deputy Richardson towards the front offices, Deputy Richardson without justification or reason shoved B.E.J. into the hallway wall and lockers. Id. ¶¶ 36, 37. B.E.J. then began to turn and face Deputy Richardson when Deputy Richardson shot B.E.J. in the chest with a taser gun in front of other students and faculty. Id. ¶¶ 38, 39. B.E.J. got up from the ground and cooperated with Deputy Richardson by going to the front offices of the school. Id. ¶ 40. At the offices, and because Deputy Richardson and school officials refused to render medical care, B.E.J. allegedly removed the taser prongs himself and attempted to tend to himself. Id. ¶¶ 43, 44. Further, B.E.J. was surrounded by school officials and detained in a cold office, in his bloody clothes, without first aid, a blanket, or water. Id. ¶¶ 45.

A parent and a legal guardian of B.E.J. sued Defendants for a number of causes of action under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act of 1990 ("ADA"), and Georgia state law.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). However, the Court does not accept as true threadbare recitations of the elements of the claim

4

and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

Plaintiffs have set forth the following claims in their Second Amended Complaint: (1) Count One, a § 1983 "Unlawful Stop and Detention" claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (2) Count Two, a § 1983 First Amendment Retaliation claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (3) Count Three, a § 1983 Excessive Force claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (4) Count Four, a § 1983 False Arrest claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (5) Count Five, a § 1983 False Imprisonment claim against Deputy Richardson in his individual and official capacities, Sheriff Sikes in his

individual and official capacities, Janelle Charlery in her individual and official capacities, Warnella Wilder in her individual and official capacities, Glenn Wilson in his individual and official capacities, and Liberty County School District in its individual and official capacities; (6) Count Six, a "State Constitutional Claim" for excessive force against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (7) Count Seven, a state law assault claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (8) Count Eight, a state law battery claim against Deputy Richardson in his individual and official capacities and Sheriff Sikes in his individual and official capacities; (9) Count Nine, a state law intentional infliction of emotional distress claim against Deputy Richardson in his individual and official capacities, Sheriff Sikes in his individual and official capacities, Janelle Charlery in her individual and official capacities, Warnella Wilder in her individual and official capacities, Glenn Wilson in his individual and official capacities, and Liberty County School District in its individual and official capacities; (10) Count Ten, a state law negligence claim against Deputy Richardson in his individual and official capacities, Sheriff Sikes in his individual and official capacities, Janelle Charlery in her individual and official

capacities, Warnella Wilder in her individual and official capacities, Glenn Wilson in his individual and official capacities, and Liberty County School District in its individual and official capacities; (11) Count Eleven, a § 1983 "Failure to Properly Screen and Hire" claim against Sheriff Sikes in his individual and official capacities; (12) Count Twelve, a § 1983 "Failure to Properly Train" claim against Sheriff Sikes in his individual and official capacities; (13) Count Thirteen, a § 1983 "Failure to Supervise and Discipline" claim against Sheriff Sikes in his individual and official capacities; and (14) Count Fourteen, a § 1983/ADA "Disability Harassment and Discrimination" claim against Janelle Charlery in her individual and official capacities, Warnella Wilder in her individual and official capacities, Glenn Wilson in his individual and official capacities, and Liberty County School District in its individual and official capacities.

**I. Section 1983 Fourth Amendment Unlawful Arrest Claims and First Amendment Retaliation Claims Against Deputy Richardson and Sheriff Sikes in Their Individual Capacities (Counts One, Two, Four, and Five) and Section 1983 Claims Against Charlery, Wilder, Wilson, and Liberty County School District in Their Individual Capacities (Count Five)**

Defendants Richardson and Sikes argue that based on the factual allegations in the Second Amended Complaint they are entitled to qualified immunity for the four claims related to the arrest of B.E.J. Likewise, Defendants Charlery, Wilder, and Wilson

7

argue that they are entitled to qualified immunity on Plaintiffs'
§ 1983 false imprisonment claims against them. "Qualified immunity
protects government officials performing discretionary functions
from suits in their individual capacities unless their conduct
violates 'clearly established statutory or constitutional rights
of which a reasonable person would have known.'" Dalrymple v. Reno,
334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536
U.S. 730, 739 (2002)). For qualified immunity to apply, the
official must establish that "he was acting within the scope of
his discretionary authority when the allegedly wrongful acts
occurred." McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir.
2009) (citation omitted). If the official shows he was acting
within the scope of his discretionary authority, then the burden
shifts to the plaintiff to "show that: (1) the defendant violated
a constitutional right, and (2) this right was clearly established
at the time of the alleged violation." Whittier v. Kobayashi, 581
F.3d 1304, 1308 (11th Cir. 2009) (quoting Holloman v. Harland, 370
F.3d 1252, 1264 (11th Cir. 2004)). The Court is permitted to use
its discretion to address the second qualified-immunity prong
first, which it does here. Poulakis v. Rogers, 341 F. App'x 523,
525 (11th Cir. 2009).

As an initial matter, Defendant Richardson was acting within
his discretionary authority throughout the encounter, and
Plaintiffs have not argued otherwise. Thus, the burden shifts to

Plaintiffs to "show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Whittier, 581 F.3d at 1308.

In this case, it is helpful to address the second prong, whether the right was clearly established, first. The second prong asks whether the law enforcement officer had "arguable probable cause" to arrest a person; if the officer did not, then the officer violated clearly established law. As the Eleventh Circuit has stated,

> "In wrongful arrest cases, we have frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry. In other words, we have said that when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity *if* he had 'arguable probable cause' to make the arrest."

Poulakis v. Rogers, 341 F. App'x 523, 526 (11th Cir. 2009) (citing Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009))). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] *could* have believed that probable cause existed to arrest." Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (quoting Redd v. City of Enter., 140 F.3d 1378, 1382 (11th Cir. 1998)).

Before determining whether Defendant Richardson had arguable probable cause to arrest B.E.J., the Court must determine the point

at which B.E.J. was arrested. It is at that point in time that Defendant Richardson must have had arguable probable cause which could entitle these Defendants to qualified immunity. "Whether a seizure has occurred depends on whether a reasonable person, in light of the totality of the circumstances, would have believed that he was not free to leave." United States v. Brown, 700 F. App'x 976, 978 (11th Cir. 2017). As the United States Supreme Court has recognized, the subjective intention of an officer to detain a person had that person attempted to leave "is irrelevant except insofar as that may have been conveyed to the [person]." U.S. v. Mendenhall, 446 U.S. 544, 554 n.6 (1980). Likewise, the inquiry is not whether B.E.J. believed he was free to leave but whether a reasonable person would have such belief under the same circumstances.

Accepting as true the allegations contained in the Second Amended Complaint, B.E.J. was arrested when Deputy Richardson "placed his body and acted so as to detain B.E.J. III in the classroom and to control what B.E.J. III could do and where he could go." Dkt. No. 36 ¶ 33. It was at this point in time that a reasonable person would believe that he was not free to leave. Thus, it was at this point in time that Deputy Richardson needed arguable probable cause to be immune from any Fourth Amendment claims arising from this arrest.

Viewing the factual allegations in the Second Amended Complaint as true and viewing them in the light most favorable to Plaintiffs, and taking all reasonable inferences in Plaintiffs' favor, Deputy Richardson had arguable probable cause to believe that B.E.J. had violated Georgia law. Under Georgia law, specifically O.C.G.A. § 20-2-1181, it is "unlawful for any person to knowingly, intentionally, or recklessly disrupt or interfere with the operation of any public school . . . ." The factual allegations in the Second Amended Complaint show that B.E.J.'s behavior directly prior to his arrest was so disruptive to Charley's classroom that Charley contacted the school's front office. Further, Wilder and/or Wilson deemed B.E.J.'s behavior so disruptive that they sent Deputy Richardson to Charley's classroom. At that point in time, Deputy Richardson *likely* had arguable probable cause that B.E.J. was in violation of O.C.G.A. § 20-2-1181. Whether arguable probable cause actually existed at that time need not be determined by the Court, because Deputy Richardson *certainly* had arguable probable cause that B.E.J. was in violation of O.C.G.A. § 20-2-1181 when, according to the Seconded Amended Complaint, Deputy Richardson entered the classroom and instructed B.E.J. to come forward, and B.E.J. did not cooperate but instead asked Deputy Richardson what he had done. At this point in time, a reasonable officer who had been called to a classroom by school administrators and had asked a student to

11

come forward but was met with non-compliance could reasonably believe that the student was recklessly or intentionally disrupting the operation of that classroom in violation of Georgia law. See Case, 555 F.3d at 1327 ("Probable cause for an arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992))); see also In re J.D., 655 S.E.2d 702, 703 (Ga. Ct. App. 2007) (finding that a student's "conduct that disrupted the classroom while school was in session was *clearly* a violation of" O.C.G.A § 20-2-1181 (emphasis added)). Accordingly, Deputy Richardson, Sheriff Sikes, Charlery, Wilder, and Wilson in their individual capacities are entitled to qualified immunity based on the factual allegations in the Second Amended Complaint. See Wood v. Kesler, 323 F.3d 872, 878-83 (11th Cir. 2003) (finding an officer was entitled to qualified immunity on § 1983 Fourth Amendment and First Amendment Retaliation claims because the officer had arguable probable cause to arrest the plaintiff); Jones v. Brown, 649 F. App'x 889, 892 (11th Cir. 2016) ("Because the final amended complaint, on its face, indicated that Officers Bryant and Centeno had sufficient probable cause, Jones's third amended complaint failed to allege one of the required elements of both false arrest and malicious prosecution."); Logan v. Ford, No. 1:07-CV-0975,

2008 WL 11417076, *6 (N.D. Ga., March 19, 2008) ("In order to establish a cognizable claim for false imprisonment under § 1983, plaintiff must show the elements of common law false imprisonment— (1) intent to confine; (2) acts resulting in confinement; and (3) consciousness of the victim of confinement or resulting harm—and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment." (citing Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996))).[1]

For these reasons, Deputy Richardson's and Sheriff Sikes' Motion to Dismiss with respect to Counts One, Two, Four, and Five, in their individual capacities, is due to be **GRANTED**. Defendants Charlery, Wilder, Wilson, and Liberty County School District's Motion to Dismiss with respect to Count Five, in their individual capacities, is due to be **GRANTED**.

## II. Eighth Amendment Claim Against Deputy Richardson and Sheriff Sikes in Their Individual and Official Capacities

In Count Three of the Second Amended Complaint, Plaintiffs seemingly raise a claim for cruel and unusual punishment under the Eighth Amendment. Dkt. No. 36 at 137. However, in their brief opposing Sikes and Robinson's Motion for Summary Judgment,

---

[1] Additionally, B.E.J. could not have been "seized" within the meaning of the Fourth Amendment (as incorporated by the Fourteenth Amendment) by Defendants Sheriff Sikes, Charlery, Wilder, and Wilson because B.E.J. had been placed under arrest by Deputy Richardson. Plaintiffs have not alleged facts showing that B.E.J. was released from custody at any relevant point. These Defendants could not, then, have seized B.E.J. when he was already seized. For this additional reason, B.E.J. cannot show a constitutional violation in relation to the alleged actions of Sheriff Sikes, Charlery, Wilder, and Wilson; thus, they are entitled to qualified immunity on this separate ground.

Plaintiffs admit that this claim "only applies once Plaintiff is a convicted prisoner." Dkt. No. 40. Moreover, at the hearing on this matter held on November 7, 2019, Plaintiffs expressly conceded that they did not intend to pursue an Eighth Amendment claim. Accordingly, Deputy Richardson and Sheriff Sikes' Motion to Dismiss with respect to Plaintiffs' Eighth Amendment Claim, in their individual and official capacities, is due to be **GRANTED**.

**III. Section 1983 Fourth Amendment Claims and First Amendment Retaliation Claims Against Deputy Richardson and Sheriff Sikes in Their Official Capacities (Counts One, Two, Three, Four, and Five) and Section 1983 Deliberate Indifference Claims Against Sheriff Sikes in His Official Capacity (Counts Eleven, Twelve, and Thirteen)**

Deputy Richardson and Sheriff Sikes were both agents of Liberty County Sheriff's Department; thus, a suit against them in their official capacities is a suit against Liberty County Sheriff's Department. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1991))).

Suits under § 1983 can only be lodged against "persons" within the meaning of the statute. It is well-established that an "arm of the state" is not a "person" within the meaning of § 1983 and, thus, that an arm of the state is not susceptible to suit under

14

the statute. Edenfield v. Gateway Behavioral Health Servs., 2018 WL 6199685, at *3 (S.D. Ga. Nov. 28, 2018) ("The United States Supreme Court has made it clear that 'neither a state nor its officials acting in their official capacities are "persons" under § 1983.'" (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989))); see also Lee v. Dugger, 902 F.2d 822, 826 n.4 (11th Cir. 1990) ("In Will v. Michigan Dep't of State Police . . . , the Court declared that 'States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' and state 'officials acting in their official capacities' are not 'persons' for the purpose of a section 1983 damages suit."). Courts in this circuit use "four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003) (citations omitted).  Notably, "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. at 1308. Here, the functions at issue are a Georgia sheriff's arrest of a suspect, a Georgia sheriff's excessive use of force when arresting a suspect, a Georgia sheriff's screening and hiring

process, a Georgia sheriff's training of his deputies, and a Georgia sheriff's supervision and discipline of his deputies.

Federal courts in this Circuit have repeatedly determined that a Georgia sheriff is an arm of the state when undertaking these functions. As this Court has previously concluded, "[s]ince Manders was decided in 2003, the relevant Georgia law remains essentially unchanged. Indeed, it is now 'insurmountable' that Georgia sheriffs act as arms of the state—not as county officials[.]" Frederick v. Brown, No. CV 113-176, 2015 WL 4756765, at *14 (S.D. Ga. Aug. 10, 2015) (emphasis added) (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1332 (11th Cir. 2003)). Accordingly, the Manders factors weigh heavily in favor of Deputy Richardson and Sheriff Sikes. Thus, the Court need not and will not repeat the Manders analysis here. See also, e.g., Pellitteri v. Prine, 776 F.3d 777, 783 (11th Cir. 2015) (finding that Georgia sheriff acted as an "'arm of the State' when exercising his power to hire and fire his deputies"); Temple v. McIntosh Cty., Ga., No. 2:18-CV-91, 2019 WL 287482, at *4 n.9 (S.D. Ga. Jan. 22, 2019) ("If the Eleventh Circuit found that the sheriff in Manders was an arm of the state based on the factors described above for use of force policy in a jail, then it stands to reason that Sheriff Jessup in this case is an arm of the State for any alleged policy decisions or discipline for his deputies regarding excessive force in arrests."); Russell v. Darr, No. 4:15-CV-98, 2015 WL 8055880,

16

at *5 (M.D. Ga. Dec. 4, 2015) ("The sheriff acts as an 'arm of the state' when he trains and supervises his employees to fulfill state functions. . . . and also acts as an 'arm of the state' when hiring and firing the deputies that carry out his law enforcement policies."); McDaniel v. Yearwood, No. 2:11-CV-00165, 2012 WL 526078, at *8 (N.D. Ga. Feb. 16, 2012) (finding the sheriff "acts on behalf of the state when he trains and supervises his deputies" based on the Eleventh Circuit's explanation in Grech, 335 F.3d at 1337, that "counties . . . have no role in the training or supervision of the sheriff's deputies"); Jude v. Morrison, 534 F. Supp. 2d 1365, 1372 (N.D. Ga. 2008) ("[T]his court notes that it is bound by the Eleventh Circuit's determination that when sheriffs (and their deputies) are performing law enforcement duties, they are considered to be an arm of the state, not county officials."); Williams v. Keenan, No. 5:06 CV 290, 2007 WL 81823, at *3 (M.D. Ga. Jan. 8, 2007) ("[T]he Court finds in this case that, based on the rationale of Manders, Defendant acted as an 'arm of the State' in 'causing or effecting' Plaintiff's arrest."); Morgan v. Fulton Cty. Sheriff's Dep't, No. 1:05-CV-1576, 2007 WL 1810217, at *5 (N.D. Ga. June 21, 2007) ("With regard to the Plaintiff's excessive force claim, under Manders, when establishing and implementing force policies, the Fulton County Sheriff and therefore his deputies, act as arms of the state and are entitled to Eleventh Amendment immunity."); 2025 Emery

Highway, L.L.C. v. Bibb Cty., Georgia, No. 5:02-CV-125, 2006 WL 8446079, at *3 (M.D. Ga. Mar. 15, 2006), aff'd sub nom. 2025 Emery Highway, L.L.C. v. Bibb Cty., Ga., 218 F. App'x 869 (11th Cir. 2007) ("A sheriff's power to make arrests for violations of state law is central to his role as an arm of the state. Thus, the conclusion of Manders with regard to a use-of-force policy in a county jail applies equally to the exercise of the sheriff's law enforcement powers in this case."); Mladek v. Day, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003) (finding that sheriff and sheriff's deputies acted as arms of the state in effectuating arrests and subsequent detentions).

For these reasons, Deputy Richardson's Motion to Dismiss Counts One, Two, Three, Four, and Five, in his official capacity, is due to be **GRANTED**. Sheriff Sikes' Motion to Dismiss Counts One, Two, Three, Four, Five, Eleven, Twelve, and Thirteen, in his official capacity, is due to be **GRANTED**.

## IV. Fourth Amendment Excessive Force Claim Against Sheriff Sikes in his Individual Capacity (Count Three)

Plaintiffs seek to hold Sheriff Sikes liable for Deputy Richardson's alleged use of excessive force even though Sheriff Sikes was not alleged to have witnessed or directly participated in Deputy Richardson's alleged use of excessive force. Thus, Plaintiffs are proceeding under a theory of supervisory liability. As the Eleventh Circuit has stated, "supervisory liability under

18

§ 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). A plaintiff may prove such causal connection in at least two ways: (1) establishing that the responsible supervisor knew her subordinate would act unlawfully and failed to stop him, id. (citation omitted); and (2) establishing that "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights," id. (internal quotations and citation omitted) (alteration in original). Plaintiffs allege that Sheriff Sikes is liable, in his individual capacity, for Deputy Richardson's alleged excessive force, because "the allegations and/or inferences therefrom support one or both of the following causal connections: either that Sheriff Sikes' custom or policy resulted in the deliberate indifference to B.E.J. III's constitutional rights and/or that Sheriff Sikes knew Deputy Richardson would act unlawfully and failed to stop him from doing so, either of which is sufficient." Dkt. No. 40 at 8. Notably, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Bartlett v. Whitlock, No. 3:13-CV-149, 2015 WL 1470136, at *7 (N.D. Ga. Mar. 30, 2015)

19

(quoting Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 302 (11th Cir. 1998)) (second alteration in original).

Looking at the first alleged causal connection, Plaintiffs allege that Sheriff Sikes had knowledge that Deputy Richardson would use unlawful force against students and thus that Sheriff Sikes is liable for Deputy Richardson's alleged use of excessive force because Sikes failed to stop Deputy Richardson. Specifically, Plaintiffs aver that Sheriff Sikes had "knowledge that Deputy Richardson would act unlawfully in this regard and failed to stop him from doing so." Dkt. No. 36 ¶ 142. Such conclusory, naked averment without further factual allegations is not sufficient to plausibly allege that Sheriff Sikes had knowledge that Deputy Richards would unlawfully use force against students. See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 555, 557) (alteration in original)). Other than this conclusory allegation that Sheriff Sikes had the requisite knowledge, the Second Amended Complaint contains no allegations stating or implying that Sheriff Sikes had such knowledge. Plaintiffs, then, have not plausibly alleged that Sheriff Sikes knew that Deputy Richardson would act unlawfully.

Plaintiffs also aver that Sheriff Sikes is individually liable on this claim because his custom or policy resulted in deliberate indifference to B.E.J.'s constitutional right to be free from excessive force upon being arrested. Plaintiffs allege that there were no "policies or guidelines on how to interact with the students and regarding use of force against students, special needs students in particular." Dkt. No. 36 ¶ 64. Plaintiffs further allege that "Defendants had, at all relevant times herein, a custom or practice of permitting Liberty County Sheriff's deputies positioning themselves in the area schools to act as disciplinarians of the students at the beck and call of the staff and faculty without appropriate agreements and guidelines, which led to the constitutional violations and other wrongs complained of herein." Id. ¶ 65. Finally, Plaintiffs allege that there is a causal connection between the alleged excessive force and "Sheriff Sikes's custom and/or policy of allowing the use of unlawful force against students (or being deliberately indifferent thereto)." Id. ¶ 142.

These allegations are not sufficient to make it plausible that Plaintiffs satisfy the "extremely rigorous" standard of holding a supervisor liable in his "individual capacity for the actions of a subordinate." Knight through Kerr v. Miami-Dade Cty., 856 F.3d 795, 820 (11th Cir. 2017) (quoting Braddy, 133 F.3d at 802). First, it is not plausible that a sheriff is deliberately

indifferent to special needs students by failing to create policies or guidelines regarding use of force against special needs students. See Connick v. Thompson, 563 U.S. 51, 61 (2011) ("[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (alteration in original) (internal quotation marks and citation omitted)); id. at 62 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (internal quotation marks and citation omitted)). Plaintiffs have not pleaded facts that make it plausible that it was "known or obvious" that a consequence of failing to create policies or guidelines regarding use of force against special needs students is that officers will use excessive force against special needs students. Further, Plaintiffs have not pleaded facts showing or raising the inference of a pattern of similar constitutional violations by untrained deputies (whether placed in public schools or not).

Second, it is not plausible that a sheriff is deliberately indifferent to a special needs student's constitutional rights by a custom or practice of placing his deputies in a school. Again, Plaintiffs' conclusory allegation to the contrary is insufficient. Finally, Plaintiffs' allegations that there is a causal connection between Deputy Richardson's alleged use of excessive force and

"Sheriff Sikes's custom and/or policy of allowing the use of unlawful force against students (or being deliberately indifferent thereto)," id. ¶ 142, is quintessentially formulaic and conclusory. As such, it will not be considered. See also Grech, 335 F.3d at 1330 n.6 ("A single incident would not be so pervasive as to be a custom or practice."); Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) ("Insofar as [the plaintiff] alleged a failure to train, he merely asserted that the purported violation of his rights in this incident showed that a 'policy of inadequate training or supervision' must have existed. He did not allege facts supporting a plausible inference either that the County was on notice beforehand of a need to train in this area, or that the County made a deliberate choice not to do so."). For these reasons, Plaintiffs have failed to plausibly allege facts showing that a custom, practice, or policy (or lack thereof) resulted in a deliberate indifference to B.E.J.'s right to be free from the use of excessive force upon being arrested.

For these reasons, Defendant Sikes' Motion to Dismiss with respect to Count III, in his individual capacity, is due to be **GRANTED.**

## V. State Law Claims Against Sheriff Sikes in His Individual Capacity (Counts Six, Seven, Eight, Nine, and Ten)

In Counts Six through Ten, Plaintiffs set forth five state law claims against Sheriff Sikes in his individual capacity.

Sheriff Sikes argues that under Georgia law he is entitled to official immunity and thus that these claims should be dismissed. In Georgia, the doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." <u>Cameron v. Lang</u>, 549 S.E.2d 341, 344 (Ga. 2001) (citations omitted).[2]   In Georgia, malice is a high bar:

> [I]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.

<u>Selvy v. Morrison</u>, 665 S.E.2d 401, 404–05 (Ga. App. 2008) (internal quotations and citations omitted) (alteration in original).

While Plaintiffs admit "that initially and at the surface level Sheriff Sikes enjoys official immunity," Plaintiffs go on to contest official immunity by arguing that "it is clear that Sheriff Sikes did not just act negligently or recklessly but intentionally with regard to his actions (or inaction) with regard to the placement of deputies (and Deputy Richardson specifically in this instance) into the public schools without proper training or arrangements/coordination with the schools and their staff and in

---

[2] All agree that Sheriff Sikes was undertaking discretionary actions with respect to these claims.

his allowance of his deputies to administer harassing and unjustified discipline in school." Dkt. No. 40 at 9-10. That is the entirety of Plaintiffs' argument on this issue.

Tellingly, Plaintiffs do not even argue that Sheriff Sikes acted with an intent to harm with respect to Plaintiffs' state law claims of excessive force, assault, battery, intentional infliction of emotional distress, or negligence. This might be because the Second Amended Complaint contains no facts to make plausible that Sheriff Sikes acted with malice or an intent to cause harm to B.E.J. or any student at Liberty County High School. Without any allegations of malice or intent to harm, Sheriff Sikes is entitled to official immunity in these circumstances.

For these reasons, Sheriff Sikes' Motion to Dismiss with respect to Counts Six, Seven, Eight, Nine, and Ten, in his individual capacity, is due to be **GRANTED**.

## VI. State Law Claims Against Deputy Richardson and Sheriff Sikes in Their Official Capacities (Counts Six, Seven, Eight, Nine, and Ten)

Counts Six through Ten against Deputy Richardson and Sheriff Sikes in their official capacities are due to be dismissed because of sovereign immunity. Under the Georgia constitution, "sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby

25

waived and the extent of such waiver." Ga. Const. art. I, § 2, ¶ IX(e). Indeed, "[a] county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4. The burden of overcoming sovereign immunity is on "[t]he party seeking to benefit from the waiver of sovereign immunity." Koehler v. City of Atlanta, 472 S.E.2d 91, 92 (Ga. Ct. App. 1996) (citation omitted). Finally, Sheriff Sikes as Sheriff of Liberty County and Deputy Richardson are considered county employees when sued in their official capacity, and thus, they are entitled to sovereign immunity unless such immunity has been waived. See Seay v. Cleveland, 508 S.E.2d 159, 160 (Ga. 1998) (finding that "a county sheriff sued in his official capacity could be held liable for a deputy's negligence in performing an official function only to the extent the county had waived sovereign immunity"); Butler v. Carlisle, 683 S.E.2d 882, 887 (Ga. Ct. App. 2009) (citations omitted) ("Sovereign immunity has been extended to counties and thus protects county employees who are sued in their official capacities, unless sovereign immunity has been waived.").

Plaintiffs' entire response to Deputy Richardson's and Sheriff Sikes' sovereign immunity argument is as follows: "If the allegations of the Second Amended Complaint and alleged actions of these Defendants acting outside the scope of their authority are supported by the evidence, 'they would present a question for decision by a jury, since such action would deprive a public

official of the shield of sovereign immunity.'" Dkt. No. 40 at 12 (quoting <u>Truelove v. Wilson</u>, 285 S.E.2d 556, 559 (Ga. Ct. App. 1981)). Plaintiffs have failed to satisfy their burden of showing that sovereign immunity has been waived. Further, Plaintiffs have failed to show that either Defendant was acting outside the scope of his authority. Indeed, Plaintiffs alleged in their Second Amended Complaint that "Defendant Steve C. Sikes was, at all times relevant herein, the Sheriff of Liberty County, Georgia, and was acting within the scope of his employment," dkt. no. 36 ¶ 14, and that "Defendant M. Gary Richardson was, at all times relevant herein, a Sheriff's Deputy and officer and employee of Liberty County Sheriff's Department, and was acting within the scope of his employment," <u>id.</u> ¶ 15. Thus, Plaintiffs' suggestion that these Defendants were acting outside the scope of their authority is belied by their own allegations and is unsupported by any argument. These Defendants, then, are entitled to sovereign immunity on these state law claims against them in their official capacities.

For these reasons, Deputy Richardson and Sheriff Sikes' Motion to Dismiss with respect to Plaintiffs' state law claims, Counts Six, Seven, Eight, Nine, and Ten, in their official capacities, is due to be **GRANTED**.

**VII. Section 1983 Deliberate Indifference Claims Against Sheriff Sikes in his Individual and Official Capacities (Counts Eleven, Twelve, and Thirteen)**

Counts Eleven, Twelve, and Thirteen of the Second Amended Complaint are all against Sheriff Sikes in his individual and official capacities. These claims are brought under § 1983 and allege that Sheriff Sikes was deliberately indifferent to the constitutional rights of B.E.J.: (1) by failing to properly screen and hire Deputy Richardson (Count Eleven); (2) by failing "to promulgate or maintain constitutionally adequate training," dkt. no. 36 ¶ 260 (Count Twelve); and (3) by failing to supervise and discipline "police officers to prevent, deter and punish the unconstitutional and excessive use of force," id. ¶ 265 (Count Thirteen). Each of these counts fails to state a claim.

A supervisor can only "be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." Am. Fed'n of Labor v. City of Miami, 637 F.3d 1178, 1190 (11th Cir. 2011). Such "causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights." Cottone, 326 F.3d at 1360 (internal quotations and citation omitted) (alteration in original). Counts Eleven, Twelve, and Thirteen each allege that Sheriff Sikes was deliberately indifferent to the

28

rights of B.E.J. and Plaintiffs. See Dkt. No. 36 ¶¶ 251, 260, 270. To succeed on a claim of deliberate indifference, a plaintiff must establish the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goodman v. Kimbrough, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (internal quotation marks omitted); see also Connick, 563 U.S. at 61 ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (alteration in original) (internal quotation marks and citation omitted)). Thus, "[t]o be deliberately indifferent [an] official must know of and disregard an excessive risk to [ ] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." Goodman, 718 F.3d at 1332 (internal quotation marks omitted).

Count Eleven does not contain sufficient factual allegations to plausibly show a causal connection between any actions (or inactions) of Sheriff Sikes and any alleged constitutional violation committed by Deputy Richardson. Indeed, Paragraphs 247-53 of the Second Amended Complaint are wholly conclusory. Furthermore, Plaintiffs do not allege that Sheriff Sikes had any subjective knowledge that his alleged policy, custom, and practice risked serious harm. In short, Count Eleven fails to state a claim

because it lacks the necessary factual allegations to rise to the level of plausibility.

Count Twelve also does not plausibly allege a claim for failure to train under § 1983. "In limited circumstances, a [sheriff's] decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. But "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (internal quotation marks omitted). Here, Plaintiffs have not alleged a pattern of similar constitutional violations by untrained deputies. Rather, Plaintiffs allege in a conclusory fashion that (1) "Deputy Richardson never received full, proper or appropriate training" in several areas, dkt. no. 36 ¶ 256; (2) Sheriff Sikes (and unidentified others) "as a matter of custom, practice and policy, failed to maintain and implement adequate and proper training as to the aforementioned topics," id. ¶ 257; and (3) Sheriff Sikes (and unidentified others) "failed to provide adequate training to police officers" in several respects, id. ¶ 258. Because of these alleged failures, Plaintiffs aver that Sheriff Sikes (and unidentified others) were deliberately indifferent to the rights of B.E.J., causing B.E.J. and Plaintiffs' damages. These allegations are simply too conclusory and fail under

Eleventh Circuit precedent. Plaintiffs have failed to allege a pattern of similar constitutional violations, have failed to allege the way in which training was improper or insufficient, and have failed to allege what training would be considered proper and sufficient. The allegations in Count Twelve constitute "'a formulaic recitation of the elements of a cause of action'" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557) (alteration in original). As such, these allegations cannot properly be considered and thus are insufficient to state a claim for failure to train.

Count Thirteen, titled "Failure to Supervise and Discipline," fares no better. Paragraph 265 of the Second Amended Complaint alleges that Sheriff Sikes "failed to supervise police officers to prevent, deter and punish the unconstitutional and excessive use of force," but the Count does not allege facts explaining how Sheriff Sikes failed in this regard. Paragraph 266 alleges that "Sheriff Sikes knew or should have known of the lack of abilities and/or dangerous propensities of Defendant Richardson," but the Second Amended Complaint does not allege facts showing that it is plausible that Deputy Richardson had a "lack of abilities" or "dangerous propensities." Further, Plaintiffs do not allege facts from which it is plausible that Sherriff Sikes had knowledge of such. See Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013)

("[B]y alleging [defendants] 'knew or should have known' of a risk, [plaintiff] has merely recited an element of a claim without providing the facts from which one could draw such a conclusion."). Again, Plaintiffs' formulaic recitation of the elements of this claim are insufficient to plausibly allege this claim.

For these reasons, Sheriff Sikes' Motion to Dismiss with respect to Plaintiffs' deliberate indifference claims, Counts Eleven, Twelve, and Thirteen, in his individual and official capacity, is due to be **GRANTED**.[3]

## VIII. Section 1983 False Imprisonment Claim Against Charlery, Wilder, Wilson, and Liberty County School District in their Official Capacities (Count Five)

As an initial matter, Charlery, Wilder, and Wilson in their official capacities as agents of Liberty County School District are in essence Liberty County School District. See Busby, 931 F.2d at 776 ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" (quoting Graham, 473 U.S. at 165)). Thus, there is only one Defendant at issue here: Liberty County School District. The School District argues that Plaintiffs have failed to state a claim for municipal liability with respect to Count Five.

---

[3] The Court has already determined that, as an arm of the state, Sheriff Sikes in his official capacity is entitled to Eleventh Amendment immunity for these claims. See supra Section III.   Nevertheless, Sheriff Sikes in his official capacity is entitled to have these claims dismissed on this additional ground.

"The Supreme Court has placed strict limitations on municipal liability under § 1983." Grech, 335 F.3d at 1329. A county may only be held responsible under § 1983 for its own actions; thus, respondeat superior may not be used to establish a county's liability in a § 1983 case. Id. (citations omitted). Instead, a plaintiff "must 'identify a municipal "policy" or "custom" that caused [his] injury.'" Id. (alteration in original) (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)). A plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." Id. (citations omitted). Importantly, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks and citations omitted). Indeed, "'[a] pattern of similar constitutional violations . . . is "ordinarily necessary."'" Id. (quoting Connick, 563 U.S. at 62). "In the absence of a series of constitutional violations . . . the plaintiff[ ] must show that the policy itself is unconstitutional." Id. at 1311 (second alteration in original) (citation omitted).

Plaintiffs contend that they do state a claim against the School District because "sufficient facts are pled from which it

can be concluded or inferred that the placement of (untrained) sheriff's deputies into public schools, and without an agreement or proper training, was at least an unofficial custom or practice, if not an officially promulgated policy." Dkt. No. 41 at 10. First, Plaintiffs have not pleaded facts from which it is plausible to infer that the School District had an unofficial custom or practice of placing sheriff's deputies (whether untrained or trained) in public schools. Plaintiffs have pointed solely to the incident at issue as the basis of an unofficial custom or policy—this is insufficient. See Grech, 335 F.3d at 1330 n.6 ("A single incident would not be so pervasive as to be a custom or practice."). Even assuming *arguendo* that the School District had an unofficial custom or practice of placing untrained sheriff's deputies in public schools, Plaintiffs have failed to plead facts showing that such a custom or policy has resulted in a pattern of similar constitutional violations: again, this is the only incident alleged.  See Craig, 643 F.3d at 1310 ("A pattern of similar constitutional violations . . . is ordinarily necessary." (internal quotation marks and citations omitted)).  Thus, Plaintiffs have failed to sufficiently allege a policy or custom that caused B.E.J.'s alleged injuries.

For these reasons, Charlery, Wilder, Wilson, and Liberty County School District's Motion to Dismiss with respect to Count Five, in their Official Capacities, is due to be **GRANTED**.

**IX. Section 1983 Disability Harassment and Discrimination Claim Against Charlery, Wilder, Wilson, and Liberty County School District in Their Individual and Official Capacities (Count Fourteen)**

Count Fourteen of the Second Amended Complaint is against Charlery, Wilder, Wilson, and Liberty County School District, in their individual and official capacities. Plaintiffs state that this "is a claim for discrimination based upon B.E.J. III's disability, race, and color." Dkt. No. 36 ¶ 282.

First, Liberty County School District is an entity and thus cannot be sued in its individual capacity. Second, Plaintiffs have "agreed that ADA claims as alleged cannot lie against the individual [D]efendants, only against the School District." Dkt. No. 41 at 5. Thus, this claim with respect to Charlery, Wilder, and Wilson in their individual capacities is due to be dismissed. Third, Charlery, Wilder, and Wilson were all agents of Liberty County School District; thus, suit against them in their official capacities is the same as a suit against Liberty County School District. See Busby, 931 F.2d at 776 ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" (quoting Graham, 473 U.S. at 165)). Accordingly, the Court will refer to these Defendants in their official capacities as Liberty County School District.

Turning to the claim, Count Fourteen alleges that Liberty County School District discriminated against B.E.J. because of his disability, race, and color. This claim is brought under the ADA, Section 504 of the 1973 Rehabilitation Act ("Section 504"), and 42 U.S.C. § 1983. The School District allegedly discriminated against B.E.J. when it failed to properly implement a Section 504 plan and an Individual Education Plan (IEP) for B.E.J. The School District also allegedly discriminated against B.E.J. when Charlery, Wilder, and Wilson improperly reacted to and addressed B.E.J.'s disturbance in Charlery's classroom.

Plaintiffs aver that B.E.J. was discriminated against based on his disability and race. The former category of discrimination raises claims under the ADA and Section 504. The latter category may give rise to a claim under § 1983. Defendants only address the former category and argue that any claim for disability discrimination is due to be dismissed.

"Title II of the ADA and § 504 of the Rehabilitation Act forbid discrimination on the basis of disability in the provision of public services." J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017). "To state a claim under Title II and § 504, a plaintiff must demonstrate '(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was

36

otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'" Id. (quoting Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007)).[4]

The School District argues that Plaintiffs' disability discrimination claim is "in fact" a claim "for a free and appropriate education," or a "FAPE." Dkt. No. 38 at 5. A FAPE is guaranteed by the Individuals with Disabilities Act. See Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1311 (11th Cir. 2003) ("The IDEA guarantees disabled students a Free and Appropriate Public Education ('FAPE')." (citation omitted)). Thus, Defendant argues that Plaintiffs "have invoked the protections of the ADA and § 504 to seek remedy for IDEA violations," dkt. no. 38 at 5, and that such claims require exhaustion of administrative remedies. As the Eleventh Circuit has stated, if the "crux" of Section 504 and ADA claims "allege[ ] that the School District had denied [the student] a FAPE," then "the claims [are] subject to the IDEA's administrative exhaustion requirement." Durbrow v. Cobb Cty. Sch. Dist., 887 F.3d 1182, 1189 (11th Cir. 2018) ("[I]f and only if a claim alleges the denial of a FAPE, then the IDEA requires exhaustion of administrative remedies for that claim.").

---

[4] Notably, "[d]iscrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together." 877 F.3d at 985 (citation omitted).

Plaintiffs respond that although the claims in Count Fourteen "could be brought as a FAPE violation for failure to follow [B.E.J.'s] IEP," the claims are "also cognizable as [ ] separate claim[s] for intentional discrimination under the ADA and § 504." Dkt. No. 41 at 6 (quoting Houston Cty. Bd. of Educ., 877 F.3d at 986). In essence, Plaintiffs argue that the "crux" of Count Fourteen is not for denial of a FAPE but for discriminating against B.E.J. on the basis of his disability by "falsely imprisoning B.E.J. III in the offices, denying him basic care and treatment, forcing him to sit in a cold room in a bloody shirt after having to remove the Taser prongs himself, subjecting him to interrogation in such conditions, etc." Dkt. No. 41 at 7.[5]

The issue, then, is whether the "crux" of Count Fourteen is that the School District denied B.E.J. a FAPE. "In order to determine whether a claim alleges the denial of a FAPE, we look to the gravamen or essence of the claim." Durbrow, 887 F.3d at 1190. While part of Plaintiffs' claims in Count Fourteen are in essence for the denial of a FAPE, other parts of Plaintiffs' claims are not. The allegations that the School District failed to properly implement a Section 504 plan and an IEP are in essence claims alleging the denial of a FAPE. Nevertheless, the allegations that the School District, because of B.E.J.'s disability, forced him to

---

[5] At the November 7 hearing, Plaintiffs conceded that Charlery's merely having contacted the front office did not constitute an act of intentional discrimination.

sit in a room with taser prongs still attached to his body form the basis of intentional discrimination under Section 504 and the ADA.[6]

To the extent Plaintiffs' claims in Count Fourteen are based on the proper implementation of a Section 504 plan and an IEP, such claims are for violation of a FAPE. If the Plaintiffs have not exhausted their administrative remedies as to those particular claims, then those claims must be dismissed. Plaintiffs argue that they "have satisfied all administrative remedies required, in that they cooperated with the School District and faculty in a 'Waiver of Disciplinary Tribunal Hearing' and the 'Section 504 Manifestation Determination Review.'" Dkt. No. 41 at 6. Nevertheless, Plaintiffs have not alleged any facts in the Second Amended Complaint regarding exhaustion. Thus, Plaintiffs have not plausibly exhausted their administrative remedies as required.

For these reasons, Defendants Charlery, Wilder, Wilson, and Liberty County School District's Motion to Dismiss with respect to Count Fourteen, in their individual capacities, is due to be **GRANTED.** Defendants Charlery, Wilder, Wilson, and Liberty County School District's Motion to Dismiss with respect to the claims in Count Fourteen, in their official capacities, based on the improper implementation of a Section 504 plan or an IEP is due to be **GRANTED.**

---

[6] Notably, these Defendants do not argue that Plaintiffs have failed to allege sufficiently an element of an intentional discrimination claim, just that these claims are in essence for a denial of a FAPE.

Defendants Charlery, Wilder, Wilson, and Liberty County School District's Motion to Dismiss with respect to the claims in Count Fourteen, in their official capacities, that are *not* based on the improper implementation of a Section 504 plan or an IEP is due to be **DENIED**.

## X. State Law Intentional Infliction of Emotional Distress and Negligence Claims Against Charlery, Wilder, Wilson, and Liberty County School District in Their Individual Capacities (Counts Nine and Ten)

As an initial matter, Liberty County School District cannot be sued in its individual capacity and thus these claims against it in its individual capacity are due to be dismissed.

### A. Official Immunity

Charlery, Wilder, and Wilson argue that they are entitled to official immunity and thus that these claims should be dismissed. In Georgia, the doctrine of official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." Cameron, 549 S.E.2d at 344 (citations omitted).[7] As discussed *supra*, malice is a high bar in Georgia. Selvy, 665 S.E.2d at 404-05 ("A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.").

---

[7] All agree that Sheriff Sikes was acting in his discretionary capacity.

40

Further, "[a] ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Temple, 2019 WL 287482, at *7 (quoting Murphy v. Bajjani, 647 S.E.2d 54, 57 (Ga. 2007)). Plaintiffs argue that dismissal is not appropriate because they have plausibly alleged that these Defendants acted with malice and that they were undertaking ministerial functions.

Turning to the issue of malice, Plaintiffs contend that malice can be inferred from the following allegations: (1) "Defendants chose to have a Sheriff's Deputy intervene and take physical action rather than address the situation as was to have been done under B.E.J. III's 504 Plan," dkt. no. 41 at 7; (2) "Defendants chose to force B.E.J. III to remove the Taser prongs from his body himself with no assistance or first aid of any kind," id.; and (3) "Defendants chose to keep B.E.J. III detained in a cold office and interrogate him after having been Tased and having to remove the Taser prongs himself," id. at 7-8.

The factual allegations that Charlery, Wilder, and Wilson refused to provide medical care and treatment to B.E.J. while he had taser prongs stuck in his body and while he was wearing bloody clothes raise the reasonable inference of malice. From the allegation that these Defendants refused to provide medical care to B.E.J., it can reasonably be inferred that B.E.J. requested

41

medical care, needed medical care, and that these Defendants denied B.E.J. medical care. This denial raises the inference of an intent to injure when considering that B.E.J. was sitting with taser prongs in his body while wearing bloody clothes in full view of these Defendants.  Thus, at this early stage, these Defendants are not entitled to official immunity on these claims.[8]

## B. Failure to State a Claim for Intentional Infliction of Emotional Distress

Charlery, Wilder, and Wilson also argue that Plaintiffs have failed to state a claim for intentional infliction of emotional distress ("IIED"). In Georgia, a claim for IIED requires four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." Odem v. Pace Acad., 510 S.E.2d 326, 332 (Ga. Ct. App. 1998) (citation omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. (citation omitted). "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of

---

[8] Notably, these Defendants do not challenge the sufficiency of the factual allegations supporting these claims on any other grounds.

aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Bowers v. Estep, 420 S.E.2d 336, 339 (Ga. Ct. App. 1992) (citation omitted).

"The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress." Ghodrati v. Stearnes, 723 S.E.2d 721, 723 (Ga. Ct. App. 2012) (citation omitted). "[E]motional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable (person) could be expected to endure it." Southland Propane, Inc. v. McWhorter, 720 S.E.2d 270, 277 (Ga. Ct. App. 2011) (citation omitted). "To demonstrate that the emotional distress she suffered was severe, a plaintiff must show, at the very least, that physical and/or mental manifestations of that distress required her to seek medical or psychological treatment."

Howerton v. Harbin Clinic, LLC, 776 S.E.2d 288, 301 (Ga. Ct. App. 2015). Whether B.E.J.'s alleged emotional distress was severe enough is a matter of law to be determined by the Court. Ghodrati, 723 S.E.2d at 723 (citation omitted).

First, it is plausible that Defendants' actions of refusing medical care to B.E.J., who had taser prongs stuck in his body while wearing a bloody shirt, were sufficiently extreme and outrageous to plausibly state a claim for IIED. This is especially so when considering the special relationship of school authorities and student. See Jones v. Fayette Family Dental Care, Inc., 718 S.E.2d 88, 90 (Ga. Ct. App. 2011) ("[T]he existence of a special relationship in which one person has control over another, as in [an] employer-employee relationship, may produce a character of outrageousness that might otherwise not exist." (citation omitted) (alterations in original)).

Second, it is plausible that B.E.J. suffered severe emotional distress that resulted in physical manifestations requiring B.E.J. to seek medical treatment. The Second Amended Complaint alleges both that B.E.J. had to and did seek medical care and treatment and that he developed blood pressure problems. At this stage, it is reasonable to infer that B.E.J.'s blood pressure problems were a manifestation of his emotional distress and that he was required to seek medical treatment for these problems. Such allegations, then, are sufficient to plausibly state a claim for IIED. See

44

Coleman v. Hous. Auth. of Americus, 381 S.E.2d 303, 305 (Ga. Ct. App. 1989) (finding severe emotional distress where the plaintiff "presented evidence of physical manifestations (headaches, crying, chest pains) as well as mental and emotional symptoms (upset, despondency, depression)").

## C. Conclusion

Defendant Liberty County School District's Motion to Dismiss with respect to Counts Nine and Ten, in its individual capacity, is due to be **GRANTED**. Defendants Charlery, Wilder, and Wilson's Motion to Dismiss with respect to Counts Nine and Ten, in their individual capacities, is due to be **DENIED**.

## CONCLUSION

For the reasons provided above, Sheriff Sikes' Motion to Dismiss claims against him, in his individual and official capacities, is **GRANTED**. Sheriff Sikes is hereby **DISMISSED** from this action. Deputy Richardson's Motion to Dismiss claims against him, in his individual and official capacities, is **GRANTED**. Liberty County School District's Motion to Dismiss claims against it in its individual capacity is **GRANTED**. Liberty County School District's Motion to Dismiss claims against it in its official capacity is **GRANTED in part and DENIED in part**. Defendants Charlery, Wilder, and Wilson's Motion to Dismiss claims against them in their individual and official capacities is **GRANTED in part and DENIED in part**.

45

The following Counts and claims remain: (1) Count Three, a Section 1983 Claim for excessive force against Deputy Richardson in his individual capacity; (2) Counts Six, Seven, Eight, Nine, and Ten, state law claims against Deputy Richardson in his individual capacity; (3) Counts Nine and Ten, state law claims against Charlery, Wilder, and Wilson in their individual capacities and official capacities, and against Liberty County School District; and (4) Count Fourteen, various federal law discrimination claims against Charlery, Wilder, Wilson, and Liberty County School District in their official capacities to the extent such claims are *not* based on the improper implementation of a Section 504 plan or an IEP .

**SO ORDERED**, this 16th day of June, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

46